In re **FRED HAWES ORGANIZATION, INC., Debtor.**

William B. **LOGAN, Trustee, Plaintiff–Appellee,**

v.

**BASIC DISTRIBUTION CORPORATION, Defendant–Appellant.**

No. 91–3089.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1991.

Decided Feb. 21, 1992.

Rehearing Denied April 7, 1992.

Rehearing and Rehearing En Banc Denied April 10, 1992.

William B. Logan, Thomas R. Allen, Richard Keith Stovall, argued, briefed, Thompson, Hine & Flory, Columbus, Ohio, for plaintiff-appellee.

Geoffry V. Case, argued, briefed, Columbus, Ohio, for defendant-appellant.

Before MARTIN and MILBURN, Circuit Judges, and ROSEN, District Judge.*

ROSEN, District Judge.

Defendant-appellant Basic Distribution Corporation ("Basic") appeals from the district court's judgment affirming the bankruptcy court's decision that preferential payments in the amount of $21,760.31 made to Basic did not fall within the "ordinary course of business" exception under 11 U.S.C. § 547(c)(2). For the reasons that follow, we affirm.

Basic's challenges can be condensed to four principal issues: (1) whether the lower courts erred in holding that because there had not been an extensive course of dealing involving late payments from debtor to Basic, the preferential payments made by the debtor to Basic were conclusively not "in the ordinary course of business" within the purview of 11 U.S.C. § 547(c)(2)(B) because they were late according to the literal terms of Basic's invoices and monthly billing statements; (2) whether the lower courts erred in interpreting § 547(c)(2)(C) to require that Basic produce "independent" evidence of the open-account payment practices in the electrical-material supply industry; (3) whether the lower courts erred in holding that $1872.22 of the subject payments was not within the "ordinary course" exception despite the fact that it was paid prior to the literal due date on Basic's monthly billing statement to debtor; (4) whether, upon the face of the record, Basic is entitled to the "new-value" set-off provisions of 11 U.S.C. § 547(c)(4).

I.

This appeal concerns two "preferential payments" made by debtor Fred Hawes Organization, Inc. ("FHO"), a small electrical subcontractor, to Basic, one of its trade creditors.[1] The payments were for wholesale purchases of electrical-construction materials and supplies which had been sold by Basic on open-account trade credit to FHO.

FHO established a trade-credit open-account with Basic on November 5, 1985. The account was personally guaranteed by Fred Hawes, the president of FHO. The credit limit on the account was $10,000 with credit terms of "net 30 days." FHO purchased goods on credit from Basic and charged them to its accounts. It appears that FHO made few significant payments on any of the accounts until March 1986, and no payment prior to that time was greater than $5000.[2] The two subject payments were made in March 1986. $5,864.04 was paid on March 5, 1986 and $15,896.28 was paid on March 28, 1986.

---

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Before trial, the parties stipulated that the payments were indeed "preferential" as defined by 11 U.S.C. § 547(b).

2. During cross-examination of Mr. Kerr, president of Basic, the Trustee's attorney attempted to determine the amount of purchases charged to each of FHO's three accounts for each month from November through March and the corresponding payments/returns on each account for each month. While not completely clear, it appears that FHO made negligible payments/returns until February. In February, FHO made a payment/return of almost $4000.00. In March, FHO made the payments that are the subject of this appeal.

On May 14, 1986, FHO filed a voluntary petition under Chapter 7 of the Bankruptcy Code. William B. Logan ("Trustee") was appointed trustee for FHO. On June 13, 1988, Trustee filed an adversary proceeding against Basic seeking recovery of $21,-760.31. The main issue of that proceeding was whether the two March payments fell within the protection of 11 U.S.C. § 547(c)(2), which exempts payments "made in the ordinary course of business" and "according to ordinary business terms" from avoidance by a bankruptcy trustee.

Trial before the bankruptcy court was held in December 1988. The sole witness was Andrew W. Kerr, president of Basic. He testified that it is not the industry standard, nor Basic's custom, to follow the literal terms of sale as set forth in an invoice or monthly billing statement. Rather, subcontractors pay in response to the monthly billing statements, not the invoices. The "net thirty" days due date does not begin to run until the end of the month in which the purchase was made. Furthermore, nearly half of Basic's subcontractors do not pay by this "net thirty" days due date. The sixty-day credit hold does not come into effect until the account is sixty days past due, i.e., sixty days past the "net thirty" day due date, not sixty days past the date of purchase. Even then, application of the sixty-day credit hold is not automatic but is applied on a case by case basis.

In its April 14, 1989 decision, the bankruptcy court held that the Trustee could avoid the preferential payments. Basic, it said, had not met its burden of demonstrating that these payments were within the "ordinary course of business" exception of § 547(c)(2). The court entered a judgment against Basic in the amount of $21,760.32.

Pursuant to U.S. Bankruptcy Rule 8001(a), an appeal was taken to the United States District Court for the Southern District of Ohio. In a decision entered October 17, 1990, that district court affirmed the judgment of the bankruptcy court. On December 26, 1990, the district court denied Basic's motion for reconsideration. Basic then timely filed the instant appeal.

## II.

The fact-finding of a bankruptcy court is reviewed under the "clearly erroneous" standard. *Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir.1989); *Waldschmidt v. Ranier (In re Fulghum Const. Corp.),* 872 F.2d 739, 742 (6th Cir. 1989). A finding of fact is "clearly erroneous" when, " 'although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).[3]

It is undisputed that Basic has the burden of proving the nonavoidability of a transfer under § 547(c)(2), 11 U.S.C. § 547(g)[4], and must prove each of the three elements of § 547(c)(2) by a preponderance of the evidence. *In re Circleville Distributing Co.,* 84 B.R. 502, 503 (Bankr. S.D.Ohio 1988).

## III.

### A.

11 U.S.C. § 547(b) states that transfers made in the ninety days preceding the

---

**3.** Basic submits that when a lower court decision is based on a misunderstanding of the law, the appellate court is to review the decision for "plain error of law." *Fulghum,* 872 F.2d at 742. As the lower courts did not correctly apply the law in determining "ordinary course of business," says Basic, this court should use the plain error standard.

There is simply no evidence in the record to support the claim that the lower courts misunderstood the relevant law. Thus, there is no reason to apply the "plain error" standard as

opposed to the clearly erroneous standard. Even were the court to apply the plain error standard, there is little to suggest that the lower courts failed to satisfy it in this case.

**4.** That section states, in relevant part:

"For the purposes of this section, ... the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."
11 U.S.C. § 547(g).

petition for bankruptcy may be avoided as "preferences." However, the Bankruptcy Code permits the transferee of a preferential payment to prevent the avoidance by satisfying the three requirements set forth in 11 U.S.C. § 547(c)(2):

> (c) The trustee may not avoid under this section a transfer—
>
> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; *and*
>
> (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (emphasis added). There is no dispute that FHO's debts to Basic were incurred in the ordinary course of business as required by subsection (A). The primary dispute, therefore, concerns the last two requirements, subsections (B) and (C).

The legislative history on § 547(c)(2) is minimal. The sole relevant provision states that "[t]he purpose of this exception is to leave undisturbed normal financing relations, because it does not detract from the general policy preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5874.

Many courts have interpreted § 547(c)(2) to be a means of encouraging normal credit transactions and the continuation of short-term credit dealings with troubled debtors so as to stall rather than hasten bankruptcy. *Fulghum*, 872 F.2d at 742; *See also*

*In re Magic Circle Energy Corp.*, 64 B.R. 269, 272 (Bankr.W.D.Okla.1986).[5]

As the provision is written in the conjunctive, a creditor attempting to satisfy § 547(c)(2) must prove all three elements of that subsection. Apparently, some courts have ignored the distinction between § 547(c)(2)(B) and (C), concluding that both were satisfied so long as the late payments were consistent with the course of dealings between the debtor and the creditor. *See In re SPW Corp.*, 96 B.R. 683, 685 (Bankr. N.D.Tex.1989); *In re Unimet Corp.*, 85 B.R. 450, 453 (Bankr.W.D.Ohio 1988); *In re Steel Improv. Co.*, 79 B.R. 681 (Bankr. E.D.Mich.1987). In *In re Steel Improv. Co.*, the bankruptcy court observed that the "majority" position was to treat the two subsections as if they could be satisfied by one standard. The "minority" position, however, established a separate test for each subsection. In adopting the minority approach, the bankruptcy court said:

> The difficulty with the majority approach is that either it ignores subparagraph (C) of Section 547(c)(2) and thereby makes it a nullity, or it interprets subparagraph (C) to require the same showing as subparagraph (B) and thereby makes it superfluous. As this Court previously indicated, "It is a common axiom that a statute should be construed to give meaning to all of its provisions, if possible." *In re Hayball Trucking, Inc.*, 67 B.R. 681, 683 (Bankr.E.D.Mich.1986). *See also In re Arnett (Ray v. Security Mutual Finance Corp.)*, 731 F.2d 358, 361 (6th Cir.1984).

*In re Steel Improv. Co.*, 79 B.R. at 684.

While this court has not expressly established the requirement that fulfillment of each subsection is necessary in order to receive the benefit of the exception, it does so now. In using the conjunctive "and"

---

**5.** One court described the purpose of the voidable-preference provision as follows:

> If there were no rule against preferences, an insolvent debtor, teetering on the edge of bankruptcy and besieged by creditors, might have an incentive to buy off the most importunate of his creditors, necessarily at the expense (the debtor being insolvent) of other creditors in the hope of keeping afloat a little longer. Knowing that the debtor might do

such a thing, an unsecured creditor who sensed that a debtor might be about to go belly-up would have a strong incentive to petition him into bankruptcy so that the debtor could not deplete the assets available to pay his creditor by paying another unsecured creditor instead.

*In re Xonics Imaging, Inc.*, 837 F.2d 763, 765 (7th Cir.1988).

between subsections (B) and (C)—rather than the disjunctive "or"—Congress clearly intended to establish separate, discrete, and independent requirements which a creditor would have to fulfill to prevent avoidance. As observed by the bankruptcy court in *In re Steel Improv. Co.*, to hold otherwise would not only ignore the clear language of the statute, but would effectively render subsections (B) and (C) superfluous to each other. Other circuits have concurred, finding that fulfillment of each of § 547(c)(2)'s three subsections is necessary to receive the benefit of the exception. *WJM, Inc. v. Massachusetts Dept. of Pub. Welfare*, 840 F.2d 996, 1010–11 (1st Cir.1988) (each of the three elements must be satisfied by the creditor); *J.P. Fyfe, Inc. v. Bradco Supply Corp.;* 891 F.2d 66, 69 (3d Cir.1989) (creditor must prove all three "statutory conjunctive elements"). *See also Bell Flavors and Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.)*, 107 B.R. 707, 709 (Bankr.9th Cir.1989) ("A party in receipt of a challenged preferential transfer must satisfy [the] three conditions [of subsections (A), (B) and (C) ] to be afforded relief under the 'ordinary course of business' exception of section 547(c)(2)."); *Production Steel, Inc. v. Sumitomo Corp. of America (In re Production Steel, Inc.)*, 54 B.R. 417, 419 (Bankr.M.D.Tenn.1985) (creditor must prove each element of 11 U.S.C. § 547(c)(2) by a preponderance of the evidence).

■ The two subsections of § 547(c)(2) under review comprise a subjective and objective component respectively. The subjective prong (subsection (B)) requires proof that the debt and its payment are ordinary in relation to other business dealings between *that* creditor and *that* debtor. The objective prong (subsection (C)) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry. *WJM, Inc.*, 840 F.2d at 1010–11.

### B.

■ With respect to subsection (B), the subjective component, the courts generally eschew precise legal tests and instead engage in a fact-specific analysis. *Fulghum,*

872 F.2d at 743. In doing so, they examine several factors, "including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made." *Yurika*, 888 F.2d at 45. Late payment of a debt has been considered particularly important in determining whether the payment is ordinary. *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1567 (11th Cir. 1986). A late payment will be considered "ordinary" only upon a showing that late payments were the normal course of business between the parties. *Yurika*, 888 F.2d at 44; *Fulghum*, 872 at 743; *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 498 (8th Cir.1991); *In re Xonics Imaging, Inc.*, 837 F.2d 763, 767 (7th Cir.1988); *Storey v. Dayton Power and Light Co. (In re Cook United, Inc.)*, 117 B.R. 884, 887–88 (Bankr. S.D.Ohio 1990).

■ In this case, the bankruptcy court found that the terms of the credit agreement between FHO and Basic, as reflected in Basic's invoices, rendered FHO's payments, in part, 31 to 60 days past due, with the remaining payments 61 to 90 days past due. The bankruptcy court, relying on *Xonics*, observed that the tardiness of the payments and whether they satisfied the terms of the agreement between the parties are important factors in the determination of whether the payments were ordinary. Failure to make a payment within the time limit set forth in the contract is presumptively "nonordinary." Under this criterion, the bankruptcy court held that the admittedly late payment to Basic could not be considered ordinary.

The bankruptcy court then added, however, that the "ordinariness" decision should not be based solely on the terms of the contract, but should also take into account the parties' conduct. It admitted that a long history of dealing between parties could counteract the literal terms of a contract, but determined that, as a result of the short business relationship between these parties, their course of dealing was insufficient to compensate for the clear terms of the contract.

The district court, in affirming, noted that the bankruptcy court had properly relied on the written terms of the contract:

> If the parties had engaged in a long-term credit account relationship with the debtor making comparable payments throughout, the bankruptcy court might have concluded that such payments were "ordinary" notwithstanding the written credit terms. *See Newton v. Ed's Supply Co. (In re White)*, 58 B.R. 266, 269–70 (E.D.Tenn.1986). Because in this case, the parties' relationship was less than six months and the two payments were greater than any prior payments received, the bankruptcy court properly relied on the parties' written credit agreement. *Cf. Matter of Xonics Imaging*, 837 F.2d 763, 767 (7th Cir.1988); *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1567 (11th Cir.1986).

*Logan v. Basic Distribution Corp.*, No. C–2–89–471, slip op. at 16 (S.D.Ohio Oct. 17, 1990).

To this point in their analysis, the lower courts correctly analyzed the status of the preferential payments between FHO and Basic. Unfortunately, both fell prey to Basic's erroneous argument that absent a long course of business between the parties, a court should look to industry standards to determine whether a given payment is ordinary. This argument fails because, as noted above, § 547(c)(2) is clearly framed in the conjunctive. Congress intended that an ordinary payment be *both* ordinary between those particular parties *and* ordinary in the industry as a whole. Under Basic's argument, parties operating pursuant to an ambiguous contract and a short credit history would be able to skip the subjective analysis of § 547(c)(2)(B) and proceed directly to the objective analysis of § 547(c)(2)(C). Thus, their allegedly excepted payments would be subjected to a lesser degree of scrutiny than those between parties with an established course of business dealings. The court refuses to support such a result.

Even though the lower courts erroneously adopted appellant's argument that absent a long course of business between the parties, industry standards define the ordinariness of the payment, the lower courts reached the correct conclusion. Because of lack of probative evidence regarding industry standards, the bankruptcy court correctly determined that the express agreement was the most informative evidence left to consider. Under that express agreement, the subject payments were not ordinary and thus not entitled to benefit from the "ordinary course of business" exception. This court affirms the lower courts' decision on this issue.

### C.

■ Having found that the lower courts correctly interpreted § 547(c)(2)(B), the court's inquiry as to the two disputed payments is at an end. Under the express language of § 547(c)(2), Basic has failed to sustain its burden of demonstrating that the lower courts erroneously avoided the March payments from FHO to Basic. However, even had Basic satisfied the requirements of subsection (B), this court would find that the Trustee could avoid the payment to Basic on the ground that the transfer did not satisfy the "ordinary business terms" prong of § 547(c)(2)(C).

The parties agree that § 547(c)(2)(C) refers to what is ordinary in the particular industry involved. Basic, however, contends that the bankruptcy court erred in interpreting the requirements of that provision. Industry standard, says Basic, should be determined according to what is ordinary as between Basic and its many—approximately 1500—electrical subcontractors, rather than the industry as a whole.[6]

---

**6.** Basic cites *In re Classic Drywall, Inc.*, 121 B.R. 69 (D.Kan.1990) for the proposition that a creditor need only show that a payment was consistent with its own standard practice. In fact, *In re Classic Drywall, Inc.* does not stand for this position. Indeed, the court specifically stated:

> Whether a transfer was "made according to ordinary business terms," 11 U.S.C. § 547(c)(2)(C), is an objective determination. The court here compares and contrasts the particular transaction against the "practices" or "standards" of the industry. A transaction is objectively ordinary if it does not deviate

**246**

Basic calls this a "three-party" requirement.[7] Basic contends that the bankruptcy court erroneously required that Basic adduce evidence as to similar and independent creditors' dealings with similar and independent customers—what Basic calls a "five-party requirement." This evidence, says Basic, is far less probative of "ordinariness" than Basic's own credit policies, given the differences in the credit policies adopted by various suppliers in the industry. In this case, FHO's payment practices were in accordance with those of Basic's overall customer base.

Basic's analysis of the state of the law is simply incorrect. As noted by the court in *In re Classic Drywall, Inc., supra,* n. 6, courts do not look only at the manner in which one particular creditor interacted with other similarly situated debtors, but rather analyze whether the particular transaction in question comports with the standard conduct of business within the industry. *See also Yurika,* 888 F.2d at 45 (practice objectively ordinary because followed by 82% of carriers in the industry); *First Federal v. Barrow,* 878 F.2d 912, 918–19 (6th Cir.1989) (not ordinary because not followed by "properly conducted mortgage companies"); *In re Steel Improvement Co.,* 79 B.R. 681, 684 (Bankr. E.D.Mich.1987) (must be consistent with practices in parties' industry).

■ The bankruptcy court held that the disputed transfers were not made according to industry standards. The only testimony as to industry standards came from Mr. Kerr whose testimony in this regard the court found to lack credibility and reliability.[8] As Basic failed to satisfy its burden of proof on this issue, the court ruled against Basic. On appeal, Basic presents no evidence to suggest that this determination was "clearly erroneous." Thus, the decision of the bankruptcy court and district court on this issue is affirmed.

### D.

■ Basic next claims that the lower courts were in error in failing to allow four purchases totalling $1872.22. These purchases, says Basic, were within the terms of sale of the monthly statement, even though they were late according to the invoices. Basic explains that it is common in the industry for a supply house to generate both an invoice for a particular purchase and a monthly billing statement at the end of the month. The statements, to a certain extent, enumerate the same purchases. The customer may pay either the particular invoice or the once-a-month statement. However, as each statement contains the same "terms of sale" language, a payment may be "late" according to the invoice but not late according to the monthly statement. Basic points to testimony of Mr. Kerr that a subcontractor is expected to pay only the monthly statement. Thus, concludes Basic, as FHO was expected to pay only the monthly statement, and the sum of $1872.22, though late according to the invoice, was not late under the monthly statement, that sum should be excluded from the overall payment to be returned to the Trustee.

from industry norm but does conform to industry custom. In interpreting this element, one court has looked to an analogous concept in the Uniform Commercial Code, "usage of trade," which is defined as "'any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.;" If an accepted or common practice of the industry, it is an "ordinary business term." *In re Classic Drywall, Inc.,* 121 B.R. at 75 (citations omitted).

**7.** In support, Basic submits the following language: "The Court need not, however, rely solely upon the previous transactions between the parties, but also may look to similar transac-

tions between either of the parties and third persons in determining whether the transfer was 'ordinary.'" *In re Energy Co-op, Inc.,* 103 B.R. 171, 173 (N.D.Ill.1986). While this point is not particularly controversial, it does not support Basic's position. The cited language simply attests to the fact that in looking at industry standards, a court may *also* refer to the manner in which the parties conduct their business with other, unrelated parties. This evidence alone, however, is insufficient to prove "ordinary business terms" by a preponderance of the evidence.

**8.** In this context, the bankruptcy court said, "... the court could not expect Mr. Kerr's testimony, as president of Basic, to be any different."

The district court, when examining this question, chose not to rule on the factual issue of whether the payment was actually late, and, thus, not ordinary under the terms set forth by the bankruptcy court. Rather, the court bowed to the fact-finding of the bankruptcy court: "Although the bankruptcy court could have accepted Mr. Kerr's convoluted testimony concerning appellant's billing practices as determinative of when an invoice is due, its finding that all of the invoices were past due based on the plain language of the credit terms is not clearly erroneous." *Logan*, No. C–2–89–471, slip op. at 17.

This court, too, should defer to the findings of fact of the bankruptcy court. A review of the testimony of Mr. Kerr indicates that it is indeed unclear whether FHO was expected to pay the monthly statement or the invoice. Without any additional evidence in the record, it is incumbent upon this court to find that the factual holding of the bankruptcy court was not clearly erroneous and to affirm it. As the district court correctly stated, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Logan*, No. C–2–89–471, slip op. at 17 (citing *Anderson v. Bessemer*, 470 U.S. 564, 570, 105 S.Ct. 1504, 1509–10, 84 L.Ed.2d 518 (1985)).

### E.

■ Finally, Basic asks the court to set-off $10,642.23 from the $21,760.32 in preferential payments pursuant to 11 U.S.C. § 547(c)(4). That section provides as follows:

(c) The trustee may not avoid under this section a transfer—

\*    \*    \*    \*    \*    \*

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise avoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). Basic claims that without a set-off it would suffer a double penalty. First it would pay the $21,760 in preferential payments, then it would be stuck as an unsecured creditor for the $10,-600. Basic admits, however, that this argument was neither pleaded nor argued at trial before the bankruptcy court, even though it claims that all necessary facts for its application were before that court.

The Sixth Circuit, in *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), held that " '[i]t is the general rule ... that a federal appellate court does not consider an issue not passed upon below.' " *Id.* at 1461 (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). It added, however, that deviations are permitted in exceptional cases. *Id.*

We have carefully considered the case law of our circuit and elsewhere involving the exercise of this limited area of discretion and conclude that to the extent the issue is presented with sufficient clarity and completeness and its resolution will materially advance the progress of this already protracted litigation, we should address it.

*Id.*

Therefore, the question before the court is whether the "new value" issue was clearly and completely presented to this court and whether its resolution will materially advance the progress of the litigation. In presenting this argument, Basic adds to this litigation the consideration and analysis of a new provision. It does so without supporting case law and factual development and without affording the Trustee the opportunity to contest it. Moreover, as the central issue of this appeal is the question of preferential payments, it is difficult to see how resolution of the "new value" issue will materially advance the litigation. For these reasons, this court declines to decide the "new value" issue.

### IV.

Because Basic failed to raise the issue of set-off below, the appeal as to that issue is

**248**

DISMISSED. Because the courts below examined appropriate factors in determining that Basic failed to fulfill its burden of proof under 11 U.S.C. § 547(c)(2)(B), they did not apply an erroneous interpretation as a matter of law to § 547(c)(2)(B). Furthermore, in light of the size and timing of FHO's payments to Basic, the express agreement regarding terms of sale, and the lack of any prior course of dealings between them which may have contradicted the express terms of the agreement, the finding of the courts below that the payments in question were not made in the ordinary course of business was not clearly erroneous. Accordingly the district court's judgment affirming the bankruptcy court's judgment is AFFIRMED.