**In re CARLED, INC., Debtor.**

**Frederick M. LUPER, Chapter 7 Trustee for the Bankruptcy Estate of Carled, Inc., Plaintiff,**

v.

**COLUMBIA GAS OF OHIO, INC., Defendant.**

Bankruptcy No. 2–92–07014.
Adv. No. 2–93–0140.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

June 13, 1994.

Ruth Ann Hohl, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, OH, for plaintiff Frederick M. Luper, Trustee.

James R. Berendsen, Theodore J. Gallagher, Columbus, OH, for defendant Columbia Gas of Ohio, Inc.

## OPINION AND ORDER

### *ON COMPLAINT TO RECOVER PREFERENCE*

BARBARA J. SELLERS, Bankruptcy Judge.

Before the Court is the complaint of Frederick M. Luper, the Chapter 7 Trustee for Carled, Inc., ("Trustee") to recover an alleged voidable preference from defendant, Columbia Gas of Ohio, Inc. ("Columbia"). This matter was tried to the Court on May 31, 1994.

The Court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F)

which this Bankruptcy Judge may hear and determine.

The parties have stipulated the following facts:

(1) Within the ninety (90) day period preceding the filing of the bankruptcy petition of Carled, Inc. ("Debtor"), Columbia received payments from the Debtor totaling $8,817.61 ("the Payments").

(2) The Payments made to Columbia by the Debtor were to or for the benefit of Columbia in consideration for gas service provided to the Debtor by Columbia.

(3) The Payments were for the gas service rendered to the Debtor prior to each payment.

(4) The Payments were made to Columbia while the Debtor was insolvent.

(5) The Payments enabled Columbia to receive more than it otherwise would have received if the Payments had not been made and Columbia received payment of its debt to the extent provided in Title 11 of the United States Code.

With these stipulations and the evidence provided by the Trustee at trial, the Court hereby finds that the Trustee has established all elements of a voidable preference with respect to the Payments. *See* 11 U.S.C. § 547(b). Columbia does not seriously contest this finding. Columbia asserts, however, that the "ordinary course" defense provided by 11 U.S.C. § 547(c)(2) excepts these transfers from the Trustee's avoiding power.

Section 547(c)(2) provides:

The Trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

■ In this circuit, a party asserting an "ordinary course" defense must prove each of the three elements set forth above by a preponderance of the evidence. *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.),* 957 F.2d 239, 242–243 (6th Cir.1992). Determining whether a payment is made in the ordinary course of business and according to ordinary business terms is a factual question. *Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir.1989). The timing, amount, manner of payment, and the circumstances under which the transfer was made all must be examined. *Yurika Foods,* 888 F.2d at 45.

■ The fact that payments were made late or on an irregular basis does not establish that such payments were unusual or extraordinary if such payments are consistent with an otherwise established course of dealing between the parties. *Waldschmidt v. Ranier (In re Fulghum Construction Corp.),* 872 F.2d 739, 742 (6th Cir.1989). However, "lateness of the payments must be the norm as opposed to the exception." *Sprowl v. Miami Valley Broadcasting Corp. and WHIO, Inc. (In re Federated Marketing, Inc.),* 123 B.R. 265, 270 (S.D.Ohio 1991). *See, also, Youthland, Inc. v. Sunshine Girls of Florida, Inc. (In re Youthland, Inc.),* 160 B.R. 311 (S.D.Ohio 1993).

At the hearing, the Trustee conceded that the debts to Columbia were incurred by the Debtor in the ordinary course of its business and the ordinary course of Columbia's business. Therefore, the first element of the "ordinary course" defense has been established.

■ With regard to the second element, that the payments were made in the ordinary course of business of the Debtor and Columbia, Columbia established the following facts. The Debtor maintained three separate commercial accounts with Columbia for gas service during the parties' twenty-three month course of business. During that period, the Debtor made sixty-nine (69) payments on those accounts, only three (3) of which were received by Columbia by the due date stated on the invoice. That due date generally is 14 to 18 days from the date Columbia generates its invoices. However, the Debtor customarily made its payments to Columbia within

Columbia's 41–day billing cycle.[1] During the course of the twenty-three month relationship between the Debtor and Columbia, the number of "reminder notices" sent by Columbia to the Debtor increased in the last ten (10) billing periods.

The Court finds that the payments made by the Debtor to Columbia within the ninety (90) days preceding the bankruptcy filing were made within the "ordinary course" of conduct between the Debtor and Columbia. With the exception of the payments relating to the altered meter reading periods, the timing and sequence of payments made during that period did not dramatically change from the previous payment relationship between the parties. There was no evidence of any unusual collection activity, service shut off, or personalized communication between the parties. Even though the Debtor's tardiness worsened, the activity basically followed the sequence of regular billing, rebilling with reminder, and notice of proposed shut-off which had characterized the entire service period. The Court finds that it was the practice of this Debtor generally to make payments late, but within the 41–day billing cycle, and that the few payments outside that cycle do not constitute a change in the parties' practice during the ninety (90) days preceding the bankruptcy filing. Therefore, Columbia has established the second element of the "ordinary course" defense.

■ The final element Columbia must show is that the course of dealing between it and the Debtor is also "ordinary" in the particular industry. This element of the "ordinary course" defense is more difficult to show and is fact intensive. This element, while not intended to eviscerate the other provisions of this defense, requires Columbia to show that the payment relationship between it and the Debtor, consisting of repetitive payments after the invoice due date and outside a 30–day period, is ordinary within the utility industry.

Testimony, including the deposition of a representative of East Ohio Gas Company, established that it is common for a percentage of utility service invoices to be paid more than thirty (30) days after invoice. The evidence did not show, however, that any significant percentage of particular customers of a utility provider consistently and routinely pay outside a 30–day period. Said differently, the Court believes that to meet the third prong of the "ordinary course" defense, Columbia must show more than that a percentage of its invoiced customers pay late. The lateness must be established as a pattern for a significant percentage of specific customers. Columbia did not make this showing. Therefore, the Court finds that Columbia has not proven that the course of dealings between it and the Debtor are "ordinary" within the utility industry.

Based on the foregoing, the Court finds that each of the elements of a voidable preference under 11 U.S.C. § 547(b) has been established either by the parties' stipulations or the evidence. The Court further finds that Columbia has failed to establish that the payment relationship between it and the Debtor was common or ordinary within the utility industry for this region. Therefore, the payments made by the Debtor to Columbia within the ninety (90) days preceding the bankruptcy in the amount of $8,817.61 may be avoided by the Trustee as preferential transfers and preserved by the estate.

**IT IS SO ORDERED.**

---

1. The Court recognizes that some payments were made outside the 41–day billing period. However, a witness for Columbia explained that those atypical payments resulted from an internal realignment which altered meter reading times for certain accounts during that time period.