**In re T.B. HOME SEWING ENTERPRISES, INC.,**
Debtor.

Richard D. ELLENBERG,
as Trustee, Plaintiff,

v.

**TULIP PRODUCTION POLYMERICS,**
**INC., Defendant.**

Bankruptcy No. A90–07184.
Adv. No. 91–6728.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 8, 1993.

Richard D. Ellenberg and Richard G. McBryan, Ellenberg & Associates, P.C., Atlanta, GA, for plaintiff.

Lewis E. Hassett and Karen E. Cooper, Neely & Player, Atlanta, GA, for defendant.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court are cross-motions for summary judgment. Plaintiff seeks to avoid and recover preferential transfers in the amount of $141,812.69. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The court will grant defendant's motion and deny plaintiff's motion.

## FACTS

On May 25, 1990, T.B. Home Sewing Enterprises, Inc. filed for bankruptcy protection under Chapter 11. The case was converted to Chapter 7 on November 19, 1990, and plaintiff, Richard D. Ellenberg, was appointed as the Chapter 7 trustee. Prior to its Chapter 11 petition, debtor purchased fashion paint on several occasions from defendant Tulip Production Polymerics, Inc.

Defendant issued invoices to debtor with credit terms of 60 days as follows:

| INVOICE NUMBER | INVOICE DATE | INVOICE AMOUNT |
| --- | --- | --- |
| 143750 | 12/06/89 | $ 8,346.24 |
| 143752 | 12/06/89 | $ 6,568.80 |
| 143921 | 12/07/89 | $ 9,004.00 |
| 143922 | 12/07/89 | $15,644.94 |
| 143923 | 12/07/89 | $ 9,359.28 |
| 144531 | 12/11/89 | $44,422.40 |
| 144862 | 12/12/89 | $10,260.00 |
| 144863 | 12/12/89 | $ 6,636.00 |
| 144865 | 12/12/89 | $ 9,162.72 |
| 145025 | 12/13/89 | $ 76.75 |
| 145662 | 12/15/89 | $ 357.86 |
| 146611 | 12/19/89 | $ 1,172.40 |

(Defendant's Statement of Facts, ¶ 2–4).

Debtor's check number 10680 in the sum of $48,923.26 in payment of invoice numbers 143750, 143752, 143921, 143922, and 143923 was paid by debtor's bank on March 8, 1990. Debtor's check number 10681 in the sum of $44,422.40 in payment of invoice number 144531 was paid by debtor's bank on March 14, 1990. Debtor's check number 10683 in the sum of $27,665.73 in payment of invoice numbers 144862, 144863, 144865, 145025, 145662, and 146611 was paid by debtor's bank on March 22, 1990. Debtor also transferred check number 011329 dated April 27, 1990 to defendant. This was for a C.O.D. purchase and was paid by debtor's bank on May 1, 1990.

The four payments by debtor to defendant totalled $141,812.69.

By letter of July 15, 1991, plaintiff demanded that defendant repay the $141,812.69 as a voidable preference. (Plaintiff's Complaint, Exhibit "E"). When defendant did not make payment, plaintiff filed this adversary proceeding on September 13, 1991 to avoid and recover those payments as preferential transfers pursuant to 11 U.S.C. §§ 547(b) and 550(a). Defendant answered asserting that the payments totalling $141,-

812.69 are nonavoidable pursuant to the contemporaneous exchange exception, the ordinary course of business exception, and the subsequent new value exception. 11 U.S.C. § 5647(c)(1), (2), and (4). Thereafter, plaintiff filed his motion for summary judgment, statement of material facts, several exhibits, an affidavit, and the depositions of Teresa Dougherty and Michael Rocker. Plaintiff contends that he is entitled to judgment in the amount of $90,603.50, plus statutory interest. Plaintiff concedes that defendant has provided debtor with subsequent new value under § 547(c)(4) which offsets plaintiff's claims to the extent of $51,209.19. In addition to responding to plaintiff's motion, defendant filed a cross-motion for summary judgment, its statement of material facts, and the affidavits of Karen Cooper, Teresa Dougherty, and Mark Murovitz. Defendant contends that the subject payments were made within the ordinary course of business pursuant to § 547(c)(2), and in the alternative, that plaintiff provided an additional $18,317.40 of subsequent new value pursuant to § 547(c)(4). Plaintiff filed a motion to strike the affidavit of Mark Murovitz and an objection to defendant's motion for summary judgment as being untimely filed.

## DISCUSSION

Federal Rule of Civil Procedure 56, made applicable by Bankruptcy Rule 7056, provides for the granting of summary judgment if "... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "... might affect the outcome of the suit under the governing (substantive) law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). A dispute of fact is genuine "... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929

F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir.1975).

In determining whether there is a genuine issue of material fact, the court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985); *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). The moving party must identify those evidentiary materials listed in Federal Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Coats & Clark*, 929 F.2d at 608.

■ Plaintiff contends that defendant's cross-motion for summary judgment is untimely pursuant to Local Rule 220–5(c) [1] because it was filed more than 20 days after the close of discovery. However, pursuant to LR 220–5(a), defendant has 20 days to respond to plaintiff's motion for summary judgment filed on September 17, 1992. The parties entered into a joint stipulation for extension of time granting defendant through October 20, 1992 to file a response. On October 21, 1992, defendant filed its response along with a cross-motion for summary judgment. Defendant's filing of a cross-motion for summary judgment is an appropriate response to plaintiff's motion. The fact that it was filed one day late does not give rise to a material default. Plaintiff has not shown that he is prejudiced in any way by defendant's filing of

---

1. Local Rule 220–5(c) provides that:
 [m]otions for summary judgment shall be filed as soon as possible, but, unless otherwise ordered by the Court, not later than 20 days after the close of discovery, as established by the expiration of the original or extended discovery period or by written notice of all counsel, filed with the Court, indicating that discovery was completed earlier.
 LR 220–5(c).

its cross-motion. The court concludes, therefore, that this matter is ripe for determination on the parties' cross-motions for summary judgment, and plaintiff's contention is without merit.

The court must determine whether the payments by check numbers 10680, 10681, and 10683 can be avoided as preferences.[2] Five elements of a preference under § 547(b)[3] must be proven to avoid a transfer. Defendant admits that the subject payments meet the first and second elements of a preferential transfer under § 547(b). (Defendant's Response to Plaintiff's Statement of Facts, ¶ 5, 6).

The third element of a preference requires that the transfer be made while the debtor was insolvent. 11 U.S.C. § 547(b)(3). Under § 547(f), debtor is presumed insolvent for the 90 days immediately preceding the filing of the bankruptcy petition. *See* 11 U.S.C. § 547(f). Defendant has presented no evidence to establish an issue of material fact with regard to insolvency or to rebut this presumption.

■ Under the fourth element of a preference, the transfer must be made within 90 days of the filing of the bankruptcy petition. 11 U.S.C. § 547(b)(4). For purposes of § 547(b), a "transfer" of an ordinary check as defined by 11 U.S.C. § 101(54) occurs on the date of honor by the drawee bank. *Barnhill v. Johnson,* —— U.S. ——, ——, 112 S.Ct. 1386, 1390, 118 L.Ed.2d·39 (1992). In the present case, the checks for the subject payments were paid by debtor's bank on March 8, 1990, March 14, 1990, and March 22, 1990,

within 90 days of the May 25, 1990 filing of the bankruptcy petition.

■ The fifth element of a preference is that the transfer enables the creditor to receive more than it would receive if the estate were liquidated under Chapter 7 and the transfer had not been made. 11 U.S.C. § 547(b)(5). The test for this element was established by the Supreme Court in *Palmer Clay Prods. Co. v. Brown,* 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed. 655 (1936). As construed in *Elliot v. Frontier Properties (In re Lewis W. Shurtleff, Inc.),* 778 F.2d 1416 (9th Cir. 1986), whether a transfer is a preference:

> ... should be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." This analysis requires that in determining the amount that the transfer "enables [the] creditor to receive," such creditor must be charged with the value of what was transferred *plus* any additional amount that he would be entitled to receive from a Chapter 7 liquidation. The net result is that, as long as the distribution in bankruptcy is less than one-hundred percent, *any* payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.

*Shurtleff,* 778 F.2d at 1421 (citations omitted); *see also Barash v. Public Fin. Corp.,* 658 F.2d 504, 508–509 (7th Cir.1981); *Tidwell*

---

**2.** Plaintiff concedes that check number 011329 in the sum of $20,801.30 is not avoidable because it constitutes a contemporaneous exchange for new value. This amount, however, is included within the $51,209.19 which is subject to the subsequent new value exception.

**3.** Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;

(4) made—
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between [90] days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

v. *AmSouth Bank* (*In re Cavalier Homes of Georgia, Inc.*), 102 B.R. 878, 888 (Bankr. M.D.Ga.1989). Section 547(b)(5) codifies the ruling of *Palmer Clay Products.* 4 *Collier on Bankruptcy,* ¶ 547.08 (15th ed. 1989).

In the present case, the total distribution to unsecured creditors under a Chapter 7 liquidation is estimated to be between five and ten percent. (Affidavit of Plaintiff, ¶ 4). This fact is undisputed by defendant. Thus, absent avoidance of the subject payments, the court finds that defendant has received more than it would receive in liquidation had the payments not been made.

 Plaintiff has met his burden of proof for each element of a preference. Because there is no genuine issue of material fact in dispute, the court concludes as a matter of law that the subject payments are preferences. Plaintiff is entitled to avoid the subject payments unless defendant can show that the transfers fall under one of the exceptions in § 547(c). Defendant has the burden of proving by a preponderance of the evidence the nonavoidability of the transfers under § 547(c). *See* 11 U.S.C. § 547(g); *Kellman v. P.S.E. & G.* (*In re Jolly N, Inc.*), 122 B.R. 897, 904 (Bankr.D.N.J.1991).

Defendant contends that the subject payments fall under the ordinary course of business exception of § 547(c)(2). This section provides that a transfer may not be avoided:

> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2).

A creditor attempting to satisfy § 547(c)(2) must prove all three elements of that subsection. *Logan v. Basic Distribution Corp.* (*In re Fred Hawes Organization, Inc.*), 957 F.2d 239, 243 (6th Cir.1992). *See also Brizendine v. Barrett Oil Distributors, Inc.* (*In re Brown Transport Truckload, Inc. et al.*), 152 B.R. 690, 691–92 (Bankr.N.D.Ga.1992)

(Drake, J.); *Bonapfel v. Lubold* (*In re Family Home Sales Center, Inc.*), 65 B.R. 176, 178 (Bankr.N.D.Ga.1986). Plaintiff does not dispute that debtor's indebtedness to defendant was incurred in the ordinary course of business as required by § 547(c)(2)(A). The dispute is whether defendant has established the last two requirements, § 547(c)(2)(B) and (C).

 Under § 547(c)(2)(B), the court must make a subjective inquiry about whether the payment of a debt was made in the ordinary course of business of the debtor and the transferee. *See Fred Hawes,* 957 F.2d at 244. In making this determination, other courts have considered such factors as "the prior course of dealing between the parties, the amount of the payment, the timing of the payment, and the circumstances surrounding the payment." *Newton v. Ed's Supply Co.* (*In re White*), 58 B.R. 266, 269 (Bankr. E.D.Tenn.1986); *See also Yurika Foods Corp. v. United Parcel Service* (*In re Yurika Foods Corp.*), 888 F.2d 42, 45 (6th Cir.1989).

 In considering the circumstances surrounding the subject payments, the Eleventh Circuit has stated that payments made in response to unusual debt collection practices by the creditor are outside the scope of the ordinary course of business exception. *Marathon Oil Co. v. Flatau* (*In re Craig Oil Co.*), 785 F.2d 1563, 1566 (11th Cir.1986). Plaintiff contends that the subject payments were made in response to defendant's unusual debt collection practices.

Michael Rocker ("Rocker"), debtor's former president, testified that defendant initiated collection activities in the summer of 1989, approximately seven months prior to the beginning of the preference period. At that time, Rocker testified that debtor's "cash flows were really bad" and that debtor had been running slow in its payments. (Rocker Deposition, p. 48, 50–51). Because of debtor's slow payments, defendant indicated to debtor that it would not ship goods unless they arrived C.O.D. or debtor paid off old invoices. (Rocker Deposition at 50–53). Debtor responded by manually cutting checks to pay older invoices and by making two C.O.D. payments. Debtor also made

some payments within the 60 day credit term, and by October 5, 1989, temporarily became current in its payments to defendant.

However, plaintiff has provided no evidence that defendant initiated unusual collection activities during the preference period. Rocker testified that debtor unilaterally decided to make the subject payments to defendant so that defendant would release more goods. (Rocker Deposition, p. 62, 106). Thus, the subject payments were not made in response to any collection activity by defendant during the preference period. In addition, there is no evidence of unusual debt collection practices by defendant such as threatening phone calls and letters with regard to the subject payments. Consequently, there were no unusual debt collection practices by defendant during the preference period which remove the subject payments from the ordinary course of business exception.

The Eleventh Circuit also has stated that "[l]ateness is particularly relevant in determining whether payments should be protected by the ordinary course of business exception." *Craig Oil*, 785 F.2d at 1567; *see also Fred Hawes*, 957 F.2d at 244. Late payments are considered " 'ordinary' upon a showing that [they] were the normal course of business between the parties." *Fred Hawes*, 957 F.2d at 244. Accordingly, defendant must establish a " 'baseline' of dealings" so that the court may compare the practice of late payments during the preference period with the prior course of dealing. *See Iannacone v. Klement Sausage Co., Inc. (In re Hancock–Nelson Mercantile Co., Inc.)*, 122 B.R. 1006, 1013 (Bankr.D.Minn.1991). This "baseline of dealings" must be:

fixed at least in part during a time in which [debtor's] day-to day operations were 'ordinary' in the laymen's sense of the word. Preferably, the material period should extend back into the time before the debtor became financially distressed[.]

*Id.* at 1013.

In the present case, it is undisputed that each of the subject payments were made outside the invoice credit terms of 60 days. The subject payments were made from 90 to 98 days past the invoice date. Defendant contends that late payments were in the ordinary course of business of the parties. In support of its contention, defendant has submitted the affidavit of Karen Cooper ("Cooper affidavit"), an attorney for defendant. She has prepared and submitted to the court a summary of transactions that occurred between debtor and defendant from January 1, 1988 to January 31, 1990. (Defendant's Statement of Facts at 7; Cooper affidavit, ¶ 3, Exhibit "A"). This summary is based on original documents comprising debtor's financial records. (Cooper affidavit at 2).

The Cooper affidavit establishes a "baseline of dealings" between the parties regarding the practice of late payments. A review of the payment history from January 25, 1988 to January 31, 1990 shows that debtor's payments to defendant ranged from 27 to 176 days after the invoice date. Thus, the subject payments were made within the range established by the parties during the pre-preference period. *See Jensen v. Raymond Building Supply Corp. (In re Homes of Port Charlotte Florida, Inc.)*, 109 B.R. 489 (Bankr. M.D.Fla.1990). While there was a broad range in which debtor made payment after the invoice date, a breakdown of the payment history also shows the following:

(1) 25 invoices were paid within the 60 day credit term;

(2) 67 invoices were paid between 61–80 days from the invoice date,

(3) 33 payments were made between 81–100 days from the invoice date;

(4) 20 payments were made between 101–120 days from the invoice date; and

(5) 34 invoices were paid more than 120 days from the invoice date.

Thus, 154 of the 179 total invoices issued during the pre-preference period, or approximately 86% of these invoices, were paid outside of the 60 day credit term.

A review of the payment history also shows a similarity in the average number of days after the invoice date for payments made during the preference period as compared to payments made during the pre-preference period. Payments during the preference period averaged 93.42 days after

the invoice date, while payments during the entire pre-preference period averaged 87.36 days after the invoice date.

Furthermore, during the summer of 1989 when defendant initiated collection activities, there was a substantial increase in the average number of days after the invoice date in which debtor made payment. From May 30, 1989 to October 4, 1989, debtor made payments to defendant on 58 invoices which were issued on or before May 26, 1989. These payments ranged from 84 to 151 days after the invoice date with an average of 117.72 days. As a result of defendant's collection activities, however, debtor temporarily became current in its payments to defendant around October 5, 1989. On October 25, 1989 debtor made payment to defendant on nine invoices which only ranged from 65 to 69 days after the invoice date.

In contrast, from December 6, 1989 to January 31, 1990, debtor made payments to defendant on 17 invoices which ranged from 71 to 117 days after the invoice date with an average of 95.35 days after the invoice date. While similar this average actually exceeds the 93.42 days average experienced during the preference period. Therefore, the disputed payments were made within the range established during this time period and well after the significant collection activities during the summer. The payments made just prior to the preference period and for the one (1) year prior to the petition date reflect late payments as a normal course of business between debtor and defendant.

The undisputed evidence presented by defendant, therefore, establishes a "baseline of dealings" regarding the practice of late payments. The subject payments were made in accordance with and within the baseline of such practice. The court concludes, therefore, that defendant has carried its burden in establishing that the subject payments were made in the ordinary course of business of debtor and defendant as required by § 547(c)(2)(B).

The court next must consider whether defendant has established that the subject payments were made according to ordinary business terms pursuant to § 547(c)(2)(C). In contrast to § 547(c)(2)(B),

the court makes an objective inquiry under § 547(c)(2)(C) requiring "proof that the payment is ordinary in relation to the standards prevailing in the relevant industry." *Fred Hawes*, 957 F.2d at 244. To establish this element, defendant has submitted the affidavit of Mark Murovitz ("Murovitz affidavit"), a certified public accountant with experience in researching, collecting, and analyzing financial data. (Murovitz affidavit, ¶ 3).

Plaintiff has filed a motion to strike the Murovitz affidavit contending that its submission by defendant is in violation of a consent order entered on August 17, 1992. Paragraph four of the August 17, 1992 consent order provides that:

> [a]lthough neither the [p]laintiff nor the [d]efendant have yet identified any expert whose testimony will be used at trial, they agree that each party will notify the other of its intent to use expert testimony at trial, and will make its expert available for deposition by the opposing party upon five days' notice, or at a mutually agreeable time.

Plaintiff contends that because defendant has not given proper notice of an expert, the Murovitz affidavit which appears to be intended and used as an "expert" affidavit should not be considered by the court.

In submitting an expert affidavit in support of its motion for summary judgment, defendant has not violated the August 17, 1992 consent order. This consent order only provides that a party in this adversary give notice of an intent to use expert testimony at trial. However, it does not mention nor prohibit the filing of an expert affidavit for purposes of a summary judgment motion. Under paragraph four of the consent order, plaintiff retains the right to depose Murovitz at a mutually agreeable time. Although defendant's response and cross motion have been filed since October 21, 1992, plaintiff has made no effort to supplement this record by deposition of Murovitz or by submission of a counter affidavit of his own expert. In addition, plaintiff has cited no other authority which prohibits defendant's use of an expert affidavit in support of a summary judgment motion.

Plaintiff also contends that the Murovitz affidavit should be stricken because it does not define the "industry" upon which Murovitz's testimony is based. In the affidavit, Murovitz defines the relevant "industry" as being "companies selling goods, particularly apparel, piece goods, or notions sold nationwide either directly or through distributors, to mass merchandisers, department stores, and specialty stores." (Murovitz affidavit, ¶ 6). Defendant was a manufacturer and seller of crafts, wearable art, and other similar products. (Rocker deposition at 13). In addition, defendant sold fashion paint to plaintiff. The court concludes, therefore, that Murovitz has adequately defined the relevant "industry" and that defendant's products are within such "industry." Therefore, plaintiff's motion is denied.

The Murovitz affidavit establishes that the subject payments are ordinary in relation to the standards prevailing in the relevant industry. In the affidavit, Murovitz stated that based on his research and analysis the "range for average accounts receivables aging for companies in the [i]ndustry for accounts with terms of 60 days or less was between 53 days and 98 days." (Murovitz affidavit at 7). Thus, Murovitz concluded that in his professional opinion, the common practice within the "industry" for accounts receivables on credit terms of 60 days or less was for payments to be made ranging from 53 to 98 days after the invoice date. (Murovitz affidavit at 8).

In the present case, the subject payments ranged from 90 to 98 days after the invoice date which is within the range of the established practice in the "industry." The court concludes, therefore, that defendant has carried its burden in establishing that the subject payments were made according to ordinary business terms as required by § 547(c)(2)(C).

For the foregoing reasons, the court concludes that the subject payments are preferences; that defendant has proven the ordinary course of business exception under § 547(c)(2); and that there is no genuine issue of material fact which precludes summary judgment. Therefore, plaintiff is not entitled to avoid and recover the preferential transfers in the amount of $90,603.50, and defendant is entitled to summary judgment.

In view of the foregoing, the determination of whether there is an additional $18,317.40 of subsequent new value pursuant to § 547(c)(4) is rendered moot. Accordingly, it is

**ORDERED** that defendant's motion for summary judgment is **GRANTED** and plaintiff's motion for summary judgment is **DENIED.**

The clerk is directed serve a copy of this order upon plaintiff's counsel and defendant's counsel.

IT IS SO ORDERED.