**In re AMERI P.O.S. INC., Debtor.**

**Soneet R. Kapila, Chapter 7 Trustee, Plaintiffs,**

v.

**Media Buying, Inc., Defendant.**

**Bankruptcy No. 04–24429–BKC–RBR.**
**Adversary No. 06–1077–BKC–RBR–A.**

United States Bankruptcy Court, S.D. Florida, Broward Division.

Oct. 24, 2006.

Zach B. Shelomith, Hollywood, FL, Michael I. Goldberg, Ft. Lauderdale, FL, for Plaintiff.

Ivan J. Reich, Ft. Lauderdale, FL, for Defendant.

Joel M. Aresty, Miami, FL, for debtor.

*ORDER PARTIALLY GRANTING DE-FENDANT, MEDIA BUYING, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DE-NYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDG-MENT.*

RAYMOND B. RAY, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on Thursday, September 21, 2006 upon the parties cross motions for partial summary judgment. *See* C.P. 41 and C.P. 42. The Trustee instituted this adversary proceeding to recover allegedly preferential or fraudulent transfers made by the Debtor to Media Buying. *See* C.P. 1 para. 6, Subsequent to the filing of the complaint, the parties stipulated that a majority of the total sought is subject to the "ordinary course" defense defined in 11 U.S.C. § 547(c)(2)[1]. Accordingly the Court entered an order granting the Defendant partial summary judgment as to that amount. *See* C.P. 55. Thus only $55,928.65 is left in dispute.

In his complaint the Trustee identified 53 separate checks as avoidable preferential transfers. *See* C.P. 1 at para. 8. Of the 53 checks only 6 remain in dispute. The Trustee seeks to avoid and recover preferential transfers in the amount of $55,928.65. The Court has reviewed and taken into consideration the stipulated facts and exhibits filed by the parties ("Stipulated Facts")(C.P. 40); the Answers to Interrogatories sworn to by Mr. Ellis Kahn ("interrogatory Answers")(C.P. 29); the memoranda of law filed by both the Defendant and Plaintiff (C.P. 43 & 44); and the representations and arguments made by counsel. The Court will grant Defendant's motion and deny Plaintiff's motion.

*FACTS:*

The Debtor filed a voluntary chapter 7 petition on July 13, 2004. (C.P. 1, No. 04–24429–BKC–RBR). On January 19,2006 the Trustee filed the Complaint (C.P. 1 Adv. 06–01077–BKC–RBR–A) seeking, in Count I, the return of $619,736.22 in allegedly preferential payments or alternatively, in Count II, return of the payments as fraudulent transfers. On February 23, 2006 the Defendant filed and served its

1. References herein by section number only will be to the provisions of the Bankruptcy Code, *11 U.S.C. §§ 101* et. Seq., unless the context requires otherwise.

Answer and Affirmative Defenses. (C.P. 7).

The Defendant, Media Buying, is a Florida corporation which acts as a media buying agent on behalf of its clients. On behalf of the Debtor the Defendant was retained to purchase media with several outlets, bill the Debtor on behalf of the outlets, and forward payment from the Debtor to the respective outlets. The invoices, which are involved in this dispute involved purchases of media from (i) Direct TV and Dish Network, for television commercials; (ii) internet companies for banner ads; and (iii) retrieval services companies, who answered telephone numbers listed on the tv and internet ads.

The parties' business relationship lasted approximately 630 days. The first invoice sent from the Defendant to the Debtor is dated September 26, 2002 and the last invoice, for which payment was received, is dated June 17,2004. Over that time frame the Defendant issued 548 invoices to the Debtor. Rounded, this reveals an overall pattern of an invoice every 1.15 days. The lag time between invoice and payment averaged approximately 8.24 days over the course of the relationship.

The non-preference period lasted from September 26,2002 through April 13, 2004, a total of 566 days. During this period the Defendant issued 488 invoices to the Debtor, which translates in a negligibly higher rate of one invoice every 1.16 days. The average lag time between invoice and payment during this period was marginally higher at 8.63 days.

Of the 53 payments made during the preference period the following 6 payments remain in dispute:

1. Check 11124, $8,355.50 is disputed of the total check amount of $11,839.72.
2. Check 12909. The entire $10,000 amount.
3. Check 12995. The entire $10,203.37 amount.
4. Check 12996. $6,962.64 out of the total check amount of $10,203.37.
5. Check 12997. The entire $10,203.37 amount.
6. Check 12998. The entire $10,203.37 amount.

According to the admitted business records and the stipulated facts. The following are the details for each of the checks:

1. Check 11124 was negotiated on April 14, 2004. It paid the entire amount of invoice # 4444 of $8,355.50. Although the invoice is dated as March 8,2004 it was not sent until April 7,2004. *See* C.P. 40 (Exhibit A MB0121 and MB0129).
2. Check 12909 was negotiated in June 7, 2004. It was applied against the total balance of invoice # 4577, which was $97,700.00. Invoice # 4577 was billed on May 26, 2004.
3. Check 12995 was negotiated on June 8, 2004. It was also applied against invoice # 4577.
4. Check 12996 was negotiated on June 8, 2004. Of $6,962.64 total payment amount, $2,089.89 was applied to invoice # 4577. The rest was applied as follows: $1,318.75 was applied to invoice # 4580; $285.00 was applied to invoice # 4581; and $3,269.00 was applied to invoice # 4582. Invoice # 4580, 4581 and 4582 were all billed on May 26, 2004.
5. Check 12997 was negotiated on June 10, 2004. Its entire balance was applied to invoice # 4577.
6. Check 12998 was negotiated on June 11, 2004. Its entire balance was applied to invoice # 4577.

The variance time is the number of days above the rounded historical average of 8 days it took for an invoice to be paid. It is calculated by subtracting the payment

date less invoice date and then subtracting that total from the historical average. In the case of check 11124 the variance is −1 days (payment date of April 14, 2004 and invoice date of April 7, 2004). In the case of check 12909 the variance is +2 days (payment date of June 7,2004 and invoice date of May 26, 2004). In the case of check 12995 the variance is +3 days (payment date of June 8,2004 and invoice date of May 26, 2004). In the case of check 12996 the variance is +3 days (payment of June 8, 2004 and invoice date of May 26,- 2004). In the case of check 12997 the variance is +5 days (payment date of June 10, 2004 and invoice date of May 26, 2004). In the case of check 12998 the variance is +6 days (payment date of June 11, 2004 and invoice date of May 26, 2004).

Furthermore, the parties have stipulated that:

1. The Defendant was a third-party vendor creditor of the debtor. *See Stipulated Facts* C.P. 40 para. 17.

2. The Defendant was not an insider or investor of the debtor. *See id.* at para. 16.

3. Each of the subject payments was made within the 90 days preceding the bankruptcy petition. *See id* at para. 16.

Finally, according to the schedules filed by the Debtor at the time of the petition there was $12,750.00 in assets and $1,438,502.42 in liabilities. *See Summary of Schedules* C.P. 16. These numbers result in a shockingly low ratio of assets to liabilities, Essentially,~ for every dollar of claim there is approximately $0.00886 of assets to satisfy it. As a result of the disputed payments the Defendant received more then it would have under a chapter 7 liquidation.

### JURISDICTION

This court has jurisdiction to hear all core matters relating to this case. This matter is a core proceeding pursuant to *28 U.S.C. § 157(b)(2)(F)*.

### CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides for the granting of summary judgment if "... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Fed. R.Civ.P. 56(c)*. A fact is material if it "... might affect the outcome of the suit under governing (substantive) law ..." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985). A dispute of fact is genuine "... If the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id.* The moving party has burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The Court concludes that this matter is ripe for determination because all of the material facts have been stipulated to (*See* C.P. 40). Thus, the only issues before the court are: (1) whether any or all of the six payments can be avoided as preferences and whether any of the affirmative defenses apply or (ii) alternatively whether any of the payments are fraudulent transfers.

*I. The Disputed Transfers Are Preferences Pursuant to § 547(b).*

■ Although the Trustee asserts that the Defendant has stipulated to the fact that these payments meet the *prima facie* requirements under § 547(b), the Court will briefly evaluate each one, and note the facts that support the finding that indeed the *prima facie* elements of § 547(b) have been met. There are five elements that must be proven to avoid a transfer. The transfer must have: (i) been to or for the benefit of a creditor; (ii) for or on account

of antecedent debt; (iii) made while the debtor was insolvent; (iv) made on or within 90 days before the date of the filing and (v) the creditor will received more through the transfer then they would have receiving only a chapter 7 distribution. *See* 547(b).

■ The first element of § 547(b) has been met. The Defendant has conceded that they are a creditor (*See* C.P. 40 para. 17). Furthermore it is undisputed that the Defendant received payments from Debtor, as the dispute centers around checks from the Debtor to the Defendant.

■ The second element has also been met. Under § 547(b)(2) the transfer must be "for or on account of an antecedent debt owed by the debtor before such transfer was made." The right to payment arises when the debtor obtains the goods or services. *See e.g. In re First Jersey Securities, Inc.*, 180 F.3d 504, 511 (3d Cir.1999) (citations omitted). Therefore, the debt must arise before the payment in order to qualify for a preference. In the relationship between the Defendant and the Debtor the custom was for the Defendant to perform the services and then to bill the Debtor for the services rendered. In all of the documented checks, the service was performed then invoiced and then paid. *See Stipulated Facts* C.P. 40 para. 13 (stating that the Defendant did not invoice the Debtor until it had received an invoice from the third party).

The third element has also been satisfied. Under § 547(b)(3) the transfer must have been "made while the debtor was insolvent." § 547(b)(3). Pursuant to § 547(f) the debtor is presumed to be insolvent for the 90 days preceding filing. *See* § 547(f). There has been no evidence presented that would raise an issue of fact to rebut this presumption.

The fourth element requires that the transactions occur within 90 days of the petition date. *See* § 547(b)(4)(A). This has been stipulated to by the parties. *See Stipulated Facts* C.P. 40 at para. 16.

■ The fifth element requires that the transfer enable the creditor to receive more than it would receive if the estate were liquidated under Chapter 7 and the transfer had not been made. *See* § 547(b)(5). This "hypothetical Chapter 7" test is to be applied as of the time of filing the petition. *See Palmer Clay Prods. Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936); *see also Howell v. Bank of Newnan*, 240 B.R. 105, 119 (Bankr.N.D.Ga.1999). Given the low asset to claim ratio computed from the schedules, the Defendant is indeed receiving more as a result of the transfer then it would have under a liquidation plan.

Based on the above analysis the Court concludes as a matter of law that the six disputed payments are indeed preferences. The Trustee is therefore able to avoid the payments unless the Defendant is able to show that the payments fall under one of the exceptions found in § 547(c). To that end the Defendant has raised the "ordinary course" defense (§ 547(c)(2)) and the "new value" defense (§ 547(c)(4)), the Court will examine each in turn.

*II. Applicability of the "Ordinary Course" Defense of § 547(c)(2).*

The "ordinary course" defense is found in § 547(c)(2). The section provides that a transfer may not be avoided:

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–

(A) made in the ordinary course of business or financial affairs of the debtor and transferee; or

(B) made according to ordinary business terms[.]

■ In order to satisfy the requirements of the section the Defendant must show: (i) that the debt was incurred in the ordinary course of business, measured in light of the relationship between the Debtor and Defendant; and (ii) a showing of either (a) the payment was made in the ordinary course of affairs between the debtor and Defendant or (b) was according. to ordinary business terms. *See* § 547(c)(2); *See also* 5 COLLIER ON BANKRUPTCY P.547.04[2] (15th ed. rev.2006).

■ The Defendant has met the first prong of the test. The first element requires an examination into "the normality of such incurrences in each party's business operations generally." *See Speco Corp. v. Canton Drop Forge Inc.*, 218 B.R. 390, 398 (Bankr.S.D.Ohio 1998) (citations omitted); *see also* 5 COLLIER ON BANKRUPTCY P.547.04[2][a][ii][A] (15th ed. rev.2006). Typically, this inquiry requires the Court to determine whether there is anything unusual about the transactions underlying the preferential payment. *See* COLLIER *id.* Courts have examined the following factors in making this determination (i) was the debt typical and (ii) was it incurred at arms length in the marketplace. *See Huffman v. New Jersey Steel Corp.*, 182 B.R. 728, 735 (W.D.Va.1995). It has also been held that showing that a transaction occurred often, or regularly, is sufficient to demonstrate the debt was incurred regularly. *See id.; see also, Campbell v. Cannington (In re Economy Milling Co., Inc.)*, 37 B.R. 914, 922 (D.S.C.1983)(stating that regular or extensive volume of transactions is not necessary, implying that such a showing would indeed be more then sufficient).

In this case all debts were incurred at arms length, in a similar fashion, and on a regular basis. The Defendant was not an investor creditor of the debtor, or any type of insider, rather it was simply a trade creditor. *See Stipulated Facts* C.P. 40 at para. 17–19. Furthermore, there was almost an invoice a day for these type of services. Therefore given the status of the Defendant and Debtor relationship, coupled with the evidence to suggest that the debt incurred was for the same type of service involved in the other 543 invoices. *See id.* at para. 13, 21. The Court concludes that the debts at issue were incurred in the ordinary course of business between the Debtor and the Defendant.

■ The Defendant has also successfully met the second part of the test. The second prong requires either a showing that *payment* was made (i) in the ordinary course of dealings between the Debtor and Defendant, or (ii) according to ordinary business terms. *See* § 547(C)(2)(A) & (B). There has been no evidence presented regarding the business terms, therefore the entire defense rests on a finding that the payments were made in the ordinary course of dealing between the Defendant and Debtor.

■ In making the determination of whether the payment was in the ordinary course, "courts examine several factors, including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made." *see In re Yurika Foods Corp.*, 888 F.2d 42, 45 (6th Cir.1989); *see also In re Moltech Power Sys. Inc.*, 327 B.R. 675, 683–685 (Bankr.N.D.Fla.2005) (noting the following factors to be salient: (i) the length of time the parties were engaged in the transaction at issue; (ii) amount or form tendered differed from past practice; (iii) engaging in unusual collection or pay-

ment activity; (iv) presence of any special circumstances).

The length of time of the relationship between the parties is not in dispute it was approximately one year and nine months (630 days). The amounts of the disputed transfers, as noted above, are also in line with other transfers and are not raised by the parties as disputed. *See e.g. Defendant Exhibit A* at 1 (as an example invoice # 2947 was for $14,600.00 and invoice # 2952 was for $8,490.25 both were paid together by check for $23,090.00; Defendant also received several payments of $10,000). There was no evidence presented to suggest that any unusual payment activity or special circumstances. The only factor which is in dispute is whether the payments were made too far outside the baseline average of 8 days.

The Eleventh Circuit has stated that "lateness is particularly relevant in determining whether payments should be protected by the ordinary course., exception." *See Marathon Oil Co. v. Flatau,* 785 F.2d 1563, 1567 (11th Cir.1986). In determining what is late the court must first establish a baseline of dealings. *See In re Home Sewing Enter. Inc.,* 173 B.R. 782, 788 (Bankr.N.D.Ga.1993)(conducting an extensive examination of the case law surrounding late payments and creation of a baseline measure). There are basically two approaches to calculating a baseline: (i) establish a "range" within which transactions were consummated or (ii) calculate the average lag-time between invoice and payment. *See id.* (applying both a range and average lag-time analysis).

In *Home Sewing,* the court reviewed the payment history between the parties for a period over two years. *See id.* It found that the payments ranged from 27 to 176 days after the invoice date. *See id.* It

then applied the average lag time calculation to non-preference period and preference period transactions and found that the non-preference was 87.36 and the preference period payment average was 93.42. *See id.* The court then found that the requirement that payments be made in the ordinary course was met because the disputed payments were made within the baselines. *See id* at 789. Similarly, in *Winter Haven Truss Co.,* the court held that payments made during the preference period which were no more then 15 days outside of the invoice terms qualified for the ordinary course exception. *See Winter Haven Truss Co.,* 154 B.R. 592, 596 (Bankr.M.D.Fla.1993).

In the case before this Court, the outer bound of the range was 130 days. *See Exhibit A* C.P. 29. However, about 49% of the payments made during the non-reference period were paid between 9 and 15 days after the invoice period. *See id.* The six payments in dispute took 7, 8, 11, 13, and 14 days, respectively to be paid.[2] All of the payments therefore fall comfortably within the 130 day outer band and more importantly in line with almost half of the payments.

The average lag-time comparison yields a similar result. The stipulated average is approximately 8 days both during and before the preference period. The payments range from one day below the average to 6 days above the average. Nothing suggests that these payments were anything but normal. Furthermore, there is clear evidence that such deviation from the average was common in the non-preference period. Almost 49% of non-preference payments were made in the same late fashion as the disputed payments. As such, the payments were made in the ordi-

2. Note that two checks were paid 11 days after invoice, Check # 12995 and # 12996.

nary course and this element has been met.

The Trustee has raised a third way of calculating the time between invoice and payment, which the court declines to adopt. The Trustee asks the court to use what might be called a "percentage difference" approach. This approach would ask the Court to take the difference between the date of payment and the average lag time, divide it by the average lag time and convert it to a percentage.[3]

The problem with this approach is that it operates in a vacuum. Each of the payments is viewed insolation only with reference to the average lag-time between invoice and payment. It falls to consider that number of times that payments were similarly late. If paying late was ordinary for the parties then such payments are not preferences. *See In re Fred Hawes Org., Inc.*, 957 F.2d 239, 244 (6th Cir.1992) (citations omitted). It is this key point that the Trustee's analysis misses, there was established conduct of payments being made within 9 to 15 days of the invoice, In fact, almost half of the non-preference payments were made within 9 to 15 days. This pattern is strong evidence that such timing was the ordinary course of dealing between the parties.

Based on the analysis presented and the facts of the case the Court determines that the Defendants entitled to summary judgment on the affirmative defense of ordinary course of dealing with respect to all six of the disputed transactions. As such there is no need to consider whether the "new value" defense of § 547(c)(4) is applicable. The sole remaining issue is whether the payments can be considered a fraudulent transfer.

### III. The Transfers Were Not Fraudulent Pursuant to § 548(a)(1)(A) or (B).

There are two situations that § 548(a)(1)(A) and (B) are intended to rectify. The first is to undo a transaction that is actually intended "to hinder, delay or defraud" the debtor or the other creditors of the debtor. *See* § 548(a)(1)(A). The other is to undo a transaction for which "less than a reasonably equivalent value was exchanged". *See* § 548(a)(1)(B). The Trustee has failed to establish any facts, which would support a finding of intent to "defraud, hinder or delay" the amount of money owed to any of the other creditors. Furthermore, there is no evidence presented which would suggest that anything less then reasonably equivalent value was exchanged in any of the disputed transactions. The Defendant as noted above provided a service for a rate for an extended period of time, there is no evidence to suggest that the services provided in any way did not provide reasonable equivalent value. In fact in the Trustee's final submission to the Court there is no mention of the § 548 claim. As such summary judgment is appropriate for the Defendant on the fraudulent conveyance claim.

It is therefore,

**ORDERED:**

1. That Defendant's motion for partial judgment is **GRANTED** and the plaintiff's motion for summary judgment is **DENIED**.

2. The subject payments were made in the ordinary course of business under § 547(c)(2) and are not subject to avoidance by plaintiff.

---

**3.** As an example, check # 12909 was paid 10 days after the invoice. The calculation would then be 10 days − 8 days = 2 days. Then (2 days / 8 days) * 100 = 25% difference from the average.

3. The subject payments were not fraudulent transfers.