In re TENNOHIO TRANSPORTATION COMPANY Jointly Administered with Marpam Truck & Trailer Company, Garland Transportation Company and Commercial Trailer Company, Debtors.

TennOhio Transportation Company, et al., Plaintiffs,

v.

Navistar Financial Corporation, Defendant.

Bankruptcy Nos. 97–57772, 97–57773, 97–57776, 97–57777. Adversary No. 99–0261.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Sept. 6, 2001.

E. James Hopple, Daniel R. Swetnam, Schottenstein, Zox & Dunn Co., LPA, Columbus, OH, for debtors.

Daniel A. DeMarco, Sidney L. Williams, Hahn Loeser & Parks LLP, Columbus, OH, for Navistar Financial Corporation.

## OPINION AND ORDER ON DEBTORS' COMPLAINT FOR RECOVERY OF PREFERENTIAL TRANSFERS

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the debtors' complaint for recovery of preferential transfers made to Navistar Financial Corp. ("Navistar"). The matter was tried to the Court over the course of several days. At the Court's request, the parties submitted post-trial briefs in lieu of oral closing arguments.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core matter which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(F).

The debtors are seeking to avoid and recover four payments totalling $378,596.80 which they made to Navistar between June 10, 1997, and July 30, 1997. Their complaint is premised on 11 U.S.C. §§ 547(b) and 550(a).

To prevail on their claim, the debtors must show by a preponderance of the evidence that (1) the payments benefitted Navistar; (2) the payments were made on account of an antecedent debt; (3) while the debtors were insolvent; (4) within 90 days before the filing of the debtors' chapter 11 petition; and (5) which enabled Navistar to receive a larger share of the estate than if this case had been filed as a chapter 7 case and the payments had not been made. *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir.1996).

The parties have stipulated that the debtors have satisfied the first four elements of an avoidable preference. The parties have further stipulated that to the extent this Court determines Navistar was not fully secured on the petition date, the debtors have also proven the fifth and final element. Despite Navistar's insistence that it did not stipulate that the liquidation value of its collateral is the appropriate standard for determining its secured claim, the Court concludes that this is, indeed, the appropriate standard.

The Court, in a separate opinion and order filed in the debtors' main bankruptcy case, found that the replacement value of Navistar's collateral on the petition date was no more than $6,728,114. There can be no dispute that the liquidation of Navistar's collateral in a chapter 7 case would have brought less than replacement value.[1] Since its claim as of the debtors' petition date was stipulated at $7,109,197.62, Navistar is undersecured by at least $381,083.60.

---

1. Not surprisingly, all of the witnesses agreed that liquidation value would be less than retail or wholesale. Replacement value, in this instance, was obtained by reducing the retail value by the estimated 9.5% costs of reconditioning Navistar's collateral. *See* Opinion and Order Determining Value of Navistar's Collateral for Adequate Protection Purposes p. 8. Ralph Barnett, Navistar's valuation expert, conservatively estimated a 10% reduction from retail to liquidation. Because this percentage is greater than the percentage estimated for reconditioning, liquidation value would have to be less than replacement value.

This unsecured portion exceeds the total of the debtors' payments to Navistar during the preference period.

■ Based on the foregoing, the Court finds that the debtors have satisfied each of the five elements under § 547(b). This finding, however, does not end the inquiry. Section 547(c)(2), upon which Navistar relies, will not permit the debtors to recover the payments to the extent such payments were (1) for debts incurred by the debtors in their ordinary course of business; (2) made in the ordinary course of business of the debtors and Navistar; and (3) made according to ordinary business terms. Navistar has the burden of proving each of these three elements. *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239, 242 (6th Cir. 1992).

These parties do not dispute that the debtors incurred their obligations to Navistar in the ordinary course of their transportation business. Therefore, the Court must determine whether Navistar has satisfied the second and third elements of its ordinary course of business defense.

■ In resolving the second element, the Court must consider the history of the parties' dealings with each other, the timing and the amount of the payments, and the circumstances surrounding each transaction, i.e., their entire course of dealing. *Brown v. Shell Canada Ltd. (In re Tennessee Chemical Co.)*, 112 F.3d 234, 237 (6th Cir.1997).

■ The debtors' relationship with Navistar began in 1990 or 1991, when they purchased twenty to twenty-five (20–25) trucks at a total price in the range of $1,000,000. Between 1991 and 1995, the debtors had increased their Navistar fleet to more than two hundred (200) units. This number constituted more than half of the debtors' over-the-road tractors. Until November 1995, the debtors' payment history to Navistar was exemplary.

In late 1995, the debtors fell behind in their payments to all of their equipment lenders, including Navistar. Following extensive discussions between the debtors and Navistar, the various obligations were restructured on May 15, 1996. As part of this agreement, the debtors surrendered some twenty (20) vehicles and offered additional security in the form of four previously unencumbered tractors and trailers. The remaining indebtedness, whether in the form of installment loans or leases, was rolled into new installment notes, which included the existing arrearages.

The restructuring entailed the execution of twenty (20) separate loan agreements, with due dates of either the 15th, the 20th or the 25th of each month. The total monthly payment due on the 15th was $61,497.24; on the 20th, $81,413.61; and on the 25th, $84,203.36. The sale of the twenty (20) surrendered trucks resulted in a deficiency of $8,571.24, which was treated as a separate obligation.

Under the new loan agreements, the debtors' payments due on May 15, 1997, were delinquent when the June 4, 1997 statement was sent out. Representatives of Navistar met with the debtors' president, John Armstrong, on June 4, 1997, to assess the debtors' financial status and to coordinate the collection of the May payments which by then were all past due. Navistar tried to work out a payment plan by which the debtors could catch up. Navistar requested that the debtors make the May 15, 1997 payment by June 6, 1997; the May 20, 1997 payment by June 13, 1997; and the May 25, 1997 payment by June 20, 1997. The June 15, 1997 payment was to be made by June 16, 1997, and the June 20 and 25 payments were to be made on time. Mr. Armstrong apparently

agreed to the proposal, but no further loan documents were executed.

The debtors did not send a check to Navistar for the May 15, 1997 statement until June 10, 1997, four days after the rescheduled due date and twenty-six days after the original date due. The debtors did not wire the May 20, 1997 payment to Navistar until June 17, 1997, again four days after the rescheduled due date, and twenty-eight days after the original date due. The debtors did not send a check to Navistar for the May 25, 1997 payment until June 24, 1997, again four days after the rescheduled due date, and thirty days after it was originally due. Navistar representatives continued their collection activity by contacting the debtors every two to three days throughout June 1997 to discuss payment schedules and where the payments were. During these contacts, Navistar explored all avenues with the debtors, including the repossession of its collateral. By June 11, 1997, Navistar had serious concerns about the debtors' long-term commitment given their failure to make even the first rescheduled payment on time and their apparent unwillingness to communicate with Navistar as evidenced by their failure to return phone calls.

A second meeting was held at the debtors' offices on July 2, 1997. At that time, all of the debtors' June 1997 payments were in arrears. Mr. Armstrong, as part of the discussion, informed Navistar representatives that he was terminating his administrator, Kim Stanfield. Navistar denies having anything to do with Ms. Stanfield's termination, although its employees had from time to time complained about her lack of responsiveness to their insistence on payment.

Curtis Jennings, the district operations manager for Navistar, as well as other Navistar representatives met again at the debtors' offices on July 3, 1997. At that meeting, the June 15, 1997 payment date, which already had been extended one day, was further extended to July 7, 1997. The June 20, 1997 payment would now be made by July 14, 1997, and the June 25, 1997 payment would be sent no later than July 21, 1997. This new schedule reflected Navistar's requirement of a weekly payment from the debtors.

Despite the July 3, 1997 meetings the debtors made no further payments until July 14, 1997. Mr. Jennings would likely have contacted the debtors on July 7, 1997, regarding the June 15 payment and at some point also discussed with the debtors payment of the $8,581.74 arrearage that had not been rolled into the May 1996 restructuring package.

Through his discussions with Mr. Armstrong, Mr. Jennings learned that the debtors were five months behind in their payments to Provident Bank and that they had not made a payment to Associates since March 1997. He also learned that the debtors had failed to remit their life insurance, 401–k deductions and medical deductions on behalf of their employees; that they had bounced a workers' compensation check; and almost had their liability insurance cancelled. As of July 11, 1997, Mr. Jennings was aware that the debtors were attempting to come up with a plan to deal with all of their major vendors.

In spite of this knowledge, and likely because of it, Navistar maintained its pressure on the debtors with frequent phone contacts and unannounced visits to the debtors' offices. Its efforts bore fruit when Mr. Armstrong agreed to pay the June 15 payment out of the debtors' payroll account. The July 14, 1997 wire payment included not only the June 15 payment, but also the 1996 arrearage of $8,581.74.

When the June 20 and June 25 payments weren't made by July 24, 1997, Mr. Jennings sent Mr. Armstrong a demand letter. The letter stated that Navistar must receive the June 20 payment by July 29, 1997; the June 25 payment by July 31, 1997; and all of the payments due in July by August 18, 1997. Otherwise, Navistar would take whatever action it deemed necessary to protect its interest.

The next meeting occurred around July 30, 1997. Mr. Jennings did not recall whether he told the debtors' representatives that repossession was imminent due to the passing of the July 29 payment deadline. He did, however, note that one of the debtors' representatives left the meeting to contact the bank and order a wire transfer for the June 20 payment. The July 30 wire was the last payment the debtors made to Navistar prior to their chapter 11 filing. Mr. Jennings' superior commended him in a July 31, 1997 e-mail for keeping the debtors on a short leash.

Having considered the evidence, the Court finds that this case presents a fairly clear picture of a company whose financial situation was seriously deteriorating and which was subject to intensive collection efforts by creditors. The events described here do not evince an ordinary course pattern for either the debtors or Navistar. Therefore, Navistar did not establish the second element of its defense as required by 11 U.S.C. § 547(c)(2).

■ Although, in light of this ruling, it is unnecessary to consider the third element, the Court finds that Navistar likewise failed to establish that the debtors' payments were made according to ordinary business terms. "Ordinary business terms" means that the transaction was not so unusual as to render it an aberration in the relevant industry. *In re Carled,* 91 F.3d at 818.

■ In *Carled,* the defendant produced evidence of its own billing practices, the billing practices of several of its affiliates, and the billing practices of one of its competitors. *Id.* at 814. The Sixth Circuit held this evidence was sufficient to satisfy § 547(c)(2)(C). *Id.* at 819. This type of evidence was lacking in the instant case.

Contrary to Navistar's assertion in its post-trial brief, the testimony of Mr. Jennings and Thomas Shedwell did not show that Navistar's transactions with the debtors comported with the standard conduct of business in the trucking financing industry. In fact, Navistar's only real efforts were stymied when the Court sustained the debtors' objections to questions posed by Mr. Shedwell by Navistar counsel. The Court held and continues to hold that Mr. Shedwell was neither identified nor qualified as an expert witness to testify whether the arrangements Navistar made with the debtors were typical of those made by other lenders in the transportation industry.

In summary, the Court believes that the present situation is clearly one where payments to one creditor, i.e., Navistar, decreased the opportunity for a fair and equitable distribution to all creditors. The preference power is intended to recapture exactly the kind of payments made here. Recapture maintains the collective nature of the bankruptcy remedy. It prevents a single creditor, i.e., Navistar, from improving its position by aggressive prepetition collection activity at the expense of other similarly-situated creditors who are not as successful in the final days before a bankruptcy filing.

For the foregoing reasons, the Court determines that the debtors may avoid and recover the four payments made to Navistar during the preference period pursuant to 11 U.S.C. §§ 547(b) and 550(a). A judgment shall be entered in favor of the debt-

ors and against Navistar for $378,596.80 together with prejudgment interest at the legal rate from August 20, 1999.

**IT IS SO ORDERED.**