NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0309n.06
Filed: May 7, 2007

No. 06-1428

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: ADVANCED SYSTEMS INTERNATIONAL, INC. | ) ) ) | |
| Debtor. | ) ) | |
| _____ | ) ) | |
| KENNETH NATHAN, Trustee | ) ) ) | |
| Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| AMERICAN MEDICAL SECURITY, INC., | ) ) ) | |
| Appellee. | ) ) ) | |

Before: BOGGS, Chief Circuit Judge; DAUGHTREY and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. This case arises from Chapter 7 bankruptcy proceedings initiated against Advance Systems International (ASI). Kenneth Nathan, the appointed Trustee, seeks review of a district court decision reversing the bankruptcy court's determination that American Medical Security, Inc. (AMS), an ASI creditor, failed to carry its burden of demonstrating that a series of preferential payments ASI made to AMS were not exempt from avoidance under the "ordinary course of business" exception set forth at 11 U.S.C. § 547(c)(2). For the reasons outlined

1

below, we reverse.

## I.

ASI maintained a group insurance policy with appellee, AMS, an employee benefits provider. In spring 2002, ASI made three premium payments to AMS: (1) a wire transfer of $15,212.00 on March 26, 2002; (2) a check in the amount of $8,797.34 on April 23, 2002; and (3) a wire transfer of $11,798.38 on May 21, 2002. ASI made each of these payments after their due dates at the beginning of the month but within the thirty-one-day grace period provided for under the terms of ASI's policy with AMS.

On May 30, 2002, a group of creditors filed an involuntary bankruptcy petition against ASI seeking Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Michigan. On June 24, 2004, Nathan, the appellant and appointed Chapter 7 Trustee ("Trustee"), filed an amended complaint for avoidance and recovery from AMS of the $35,807.72 in premiums paid by ASI between March and May 2002. AMS answered, contending, among other things, that the "ordinary course of business" exception, provided under 11 U.S.C. § 547(c)(2), exempted the transfers from avoidance.

At issue in this appeal is the strength of the evidence AMS submitted on the question of whether it received the spring 2002 transfers pursuant to "ordinary business terms," a showing necessary to avail itself of the protections of § 547(c)(2). At a bench trial before the bankruptcy judge, AMS offered the testimony of Mary Janssen, an administrative manager at AMS who handles billing. Janssen testified that it was ordinary for other AMS insureds in Michigan and throughout the country to pay their premiums after their due dates but within the thirty-one-day grace period.

2

She further testified that Humana, another insurance provider and her former employer, included grace periods in its policies. Janssen had no knowledge of any insurer that did not include a grace period provision in its policies.

AMS also cited a Michigan statute that requires insurance providers to maintain a grace period during which insurance coverage must remain in force following the passage of the designated due date for payment. That statute reads:

> Sec. 3410. There shall be a provision as follows:
>
> GRACE PERIOD: A grace period of . . . (insert a number not less than "7" for weekly premium policies, "10 " for monthly premium policies and "31" for all other policies) days will be granted for the payment of each premium falling due after the first premium, during which grace period the policy shall continue in force.

Mich. Comp. Laws § 500.3410. AMS argued that the existence of section 500.3410 confirmed the ordinariness of grace period payments within the relevant industry.[1]

Following trial, the bankruptcy judge issued an oral decision, concluding that AMS failed to carry its burden of showing that the payments at issue were made consistent with industry practice, as required for the application of the ordinary course of business exception. The court held that Sixth Circuit precedent requires "at least some evidence of the standards in the relevant industry." It was insufficient, the court concluded, to present evidence of the history of dealing between "the particular debtor in this case and the defendant." As to Janssen's testimony, the bankruptcy court deemed it "vague and of little value" because Janssen offered no information on other insurance industry actors and the payment practices of their insureds. The court additionally found that

---

[1]AMS also attempted to admit the testimony of Carl Moore on the issue of insurance industry practices. On the Trustee's motion, the bankruptcy court excluded this testimony on the ground that AMS failed to disclose Moore as an expert witness prior to trial. AMS does not challenge that exclusion on appeal.

Janssen's testimony concerning her time at Humana was too dated to be of assistance. Finally, the court rejected AMS's claims as to the significance of the Michigan statute requiring grace periods, explaining again that, "[t]here needs to be some evidence regarding the actual . . . payment patterns in the relevant industry under 547 (c)(2)(C)." The court entered judgment in favor of the Trustee on July 12, 2005.

AMS sought review of the bankruptcy court's decision in the United States District Court for the Eastern District of Michigan. The district court agreed with AMS that the payments made by ASI "correspond[ed] to a general pattern of payment" maintained by AMS and ASI and "ordinary business terms." It accordingly reversed the judgment of the bankruptcy court in an order dated January 25, 2006. On February 24, 2006, the Trustee filed a timely notice of appeal.

II.

"Whether a transaction comports with the standards for business conduct within an industry is a factual determination [not to be] set aside unless it is clearly erroneous." *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir. 1996). We apply this review standard to the decision of the bankruptcy court. *See, e.g.*, *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir. 1994) ("On appeal to this court, we consider the judgment of the bankruptcy court directly, using the same standards of review as the district court.").

The Bankruptcy Code empowers a bankruptcy trustee to avoid "any transfer of an interest of the debtor in property" where the transfer occurs within ninety days of the date of a bankruptcy filing and provides the creditor with a greater interest than it would receive in a bankruptcy proceeding brought under chapter 7 of Title 11 of the United States Code. 11 U.S.C. § 547(b). Section 547(c)(2) limits the avoidance power of the trustee where the transfer is:

4

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (2002).

The Sixth Circuit has explained that subsections (B) and (C) of § 547(c)(2) embody a subjective and objective component. *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 244 (6th Cir. 1992). "The subjective prong (subsection (B)) requires proof that the debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor. The objective prong (subsection (C)) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry." *Luper*, 91 F.3d at 813. In *Luper*, the Sixth Circuit joined the "clear consensus" among the other courts of appeals that the definition of "'ordinary business terms' [under § 547(c)(2)(C)] means that the transaction was not so unusual as to render it an aberration in the relevant industry." *Id.* at 818 (collecting cases from other circuits). The creditor receiving a preference bears the burden of proving, by a preponderance of the evidence, the nonavoidability of a preferential payment under § 547(c)(2). *Id.* at 813 (relying on 11 U.S.C. § 547(g)).

The parties' dispute over the application of § 547 to the transfers at issue is limited in scope. AMS does not dispute that the transfers were subject to avoidance by the Trustee. The Trustee concedes that AMS has satisfied the first two requirements of § 547(c)(2)(A) and (B). Thus, the sole issue on appeal is whether AMS carried its burden of satisfying the so-called objective prong of the ordinary course of business test, that is, whether ASI made the relevant payments according to

5

"ordinary business terms," as required by § 574(c)(2)(C). The bankruptcy court concluded that AMS failed to meet its burden. Because the record in the instant case does not yield a "definite and firm conviction" that the bankruptcy court was mistaken, *Luper*, 909 F.2d at 813, the district court erred in reversing that decision.

As a starting point, the bankruptcy court properly concluded that Janssen offered little information of value. Her testimony concerning the payment practices of AMS customers – while relevant to the subjective prong of the ordinary course of business exception – offers no insight into the patterns of payment within the insurance industry more generally. *See Logan*, 957 F.2d at 246 ("[C]ourts do not look only at the manner in which one particular creditor interacted with other similarly situated debtors, but rather analyze whether the particular transaction in question comports with the standard conduct of business within the industry."). Similarly, one can draw no reliable conclusions based upon Janssen's testimony concerning her tenure at another insurance company. Although Janssen worked at Humana from 1981 to 1989, she conceded that she had no knowledge of Humana's "current" billing practices or the payment practices of its insureds. Moreover, that Janssen could not identify an insurance company that does not include a grace period in its policies does not necessarily prove the normalcy of payments by insureds during a grace period. We therefore agree with the bankruptcy court's well-reasoned conclusion that Janssen's testimony does not suffice to satisfy § 547(c)(2).

As to the Michigan grace period statute, AMS argues that section 500.3410 effectively moves the deadline for payment until the end of the grace period, making ASI's payments after the due date but prior to the expiration of the grace period neither late nor unusual. The Sixth Circuit has rejected AMS's argument regarding the impact of section 500.3410 on applicable due dates, however. In

6

*Grogan v. Liberty Nat'l Life Ins. Co. (In re Advance Glove Mfg. Co.)*, 761 F.2d 249, (6th Cir. 1985), the court addressed a separate bankruptcy issue arising from the enforcement of section 500.3410. The court there explained the effect of section 500.3410 on the due date established in an insurance policy:

> The 31-day grace period was not intended by the parties or Michigan law to defer the due date of the premium, but was designed for the unrelated purpose of protecting the policyholder from premature termination of coverage upon default. As stated in *Couch on Insurance*:

> The grace clause does not change the date when the premium is due but provides a period in which default in payment may be retrieved and corrected without complete loss of policy, and if death occurs during the grace period, the policy must be paid, but not because the defaulted premium was not due until the end of the grace period. Default occurs when a premium is not paid on the due date and the default is not postponed for the grace period, the latter merely constituting a waiver of the default.

*Id.* at 251 (citing *Couch on Insurance* 2d § 32:133 (2d ed. 1961)). AMS somehow construes the court's statement in *Grogan* to support its position that "payments made during the grace period" required under section 500.3410, "are not 'late.'" However, *Grogan*'s language suggests just the opposite: insureds who make payments after the established due date, are, under this court's interpretation of the Michigan statute, in default despite the continuation of coverage mandated by section 500.3410. As a consequence, any suggestion that ASI's payments within the grace period are necessarily ordinary because they were timely is without merit. This court has held that payments made during a grace period mandated by section 500.3410 are, in fact, late payments, and we conclude that section 500.3410 does not relieve AMS of its obligation to offer evidence that it

7

is ordinary for other industry actors to avail themselves of the ability to make premium payments beyond the applicable due date.[2]

AMS seeks to rely on *Luper* and *Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.)*, 888 F.2d 42 (6th Cir. 1989), in support of its claim that it adequately satisfied the objective prong of the § 547(c)(2) test. Those cases are distinguishable, however, because in each, the creditors offered some probative evidence on the business practices of other industry participants. *See Luper*, 91 F.3d at 818 (noting that creditor offered evidence that twenty-four percent of the customers of another gas utility company were at least thirty days past due on their accounts and it was ordinary for commercial customers to fall into that category); *Yurika*, 888 F.2d at 45 ("[F]or many years, 82% of carriers in the industry had not followed the credit limitation set out in the regulation and invoice terms."). There is no such evidence here.[3] As the bankruptcy court correctly observed, the existence of grace periods in insurance policies "says nothing about how often or how common or uncommon it is for [premium] payments to be made by employers' group policies after the due date and before the expiration of the grace period." In other words, AMS made no attempt to demonstrate the frequency with which insureds take advantage of the mandatory grace period across the industry.

---

[2]The dissent suggests that *Grogan* and the distinction between "late" and "timely" payments are of no relevance to the question before us. We believe this distinction material to our analysis to the extent that AMS contends that because its payments were "timely" they must also be deemed ordinary. We cite *Grogan* merely to make clear that our precedent has undercut any such argument.

[3]Although the court in *Luper* acknowledged the difficulty of acquiring information regarding competitors' payment practices, 91 F.3d at 819, it is not evident here that AMS made any effort to secure additional information concerning standard industry procedures. *See id.* at 814 ("Columbia presented evidence about the difficulty of obtaining information from other utility companies . . . relating collection deficiencies because such information is not generally known or disseminated and is considered proprietary.").

The dissent would have us allow "common knowledge and common sense . . . do at least a bit of additional work," (Dissenting Op. at 1), work that AMS has failed to do in its attempt to retain a preferential payment subject to avoidance under the Bankruptcy Code. Presumably, in cases like this, where it seems obvious that a payment was made pursuant to ordinary terms, the dissent would require the bankruptcy trustee to perform the task of demonstrating that certain payments were an aberration and subject to avoidance. (*See* Dissenting Op. at 1 ("Nathan did not present any evidence that any Michigan insurer issued policies without grace periods, or that payments within the grace period are an aberration.").) We acknowledge the appeal of such an approach, but conclude that the result would effectively amend the applicable statute, relieving creditors of the burden of § 547(g) and making trustees responsible for proving avoidability. Although the dissent accuses us of unreasonable devotion to the rules of evidence, we think it not needless formalism to enforce the statutorily-mandated burden of proof and the longstanding evidentiary principle that "[a] party with the burden of persuasion who arrives emptyhanded on decision day must expect to lose." *Monroe v. Children's Home Ass'n of Illinois*, 128 F.3d 591, 593 (7th Cir. 1997).

Had AMS offered some admissible evidence on this issue, the district court's reversal of the bankruptcy court's decision might well have been appropriate. Section 547(c)(2) is, of course, intended to protect the continuation of normal business relationships with a company in financial distress, *see Walschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989), and ASI's payments to AMS for the maintenance of health benefits for its employees possess a certain ordinary quality. However, federal statute and the law of this circuit require that a creditor seeking to retain a preferential payment subject to avoidance establish its entitlement to that more favorable treatment. *See Luper*, 91 F.3d at 813. Because AMS failed to make this showing, we

9

cannot conclude that the bankruptcy court clearly erred in finding that AMS's receipt of premium payments between March 2002 and May 2002 was not in the ordinary course of business.

III.

For the foregoing reasons, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

**BOGGS, Chief Judge, dissenting.**   The court's opinion in this case correctly identifies the governing law and properly states the standard of review.   However, I respectfully disagree with the court's conclusion.  I would hold that the bankruptcy court clearly erred in finding that the recipient of insurance payments made within the statutorily mandated grace period failed to prove by a preponderance of the evidence that "the transaction was not so unusual as to render it an aberration in the relevant industry."  *Luper*, 91 F.3d at 818.

American Medical Security did present three pieces of evidence:

(A) that this insurance company habitually received payments within the 31-day grace period;

(B) that such a grace period is mandated by statute in the state of Michigan; and

(C) that a few years earlier another major insurance company also had such grace periods in       its contracts.

Nathan did not present any evidence that any Michigan insurer issued policies without grace periods, or that payments within the grace period are an aberration.  The only question is whether AMS's evidence was sufficient to satisfy the fairly relaxed "preponderance" standard.  While an evidence maven could certainly have asked for more airtight testimony (perhaps from an insurance-law professor, or an industry analyst), I believe that AMS's evidence shows that the *existence of the grace period* accords with ordinary business terms, and that common knowledge and common sense can do at least a bit of additional work in establishing that *a payment made within an available grace period* is not an aberration.

As a general proposition, businesses generally do not give up their own money by making payments significantly in advance of the time that adverse consequences would apply.  For that reason, we clearly should not require substantial proof that it is not an aberration for a debtor to make

11

a transfer on the last day of a "regular" payment period. The debtor is simply acting rationally by taking advantage of the time-value of money for as long as it can. Yet there is no legally cognizable difference in the consequences attaching to a payment made on the last day of a "regular" payment period and to a payment made during a grace period.

It is instructive that, in the extensive discussion in the court's opinion of why a payment made during the grace period is "late" rather than "timely," there is no reference to the fact that those terms are not what is at issue in § 547(c)(2)(C). It does not matter whether the payment was late; it matters whether it was an aberration in the insurance industry. I believe that AMS's evidence, combined with the common-sense conclusion that it is good business to avail oneself of grace periods when they are available, sufficiently demonstrates that the payments it received were not aberrant.